Case number 17-4046, USA v. Mohamed Ahmed. Argument not to exceed 15 minutes per side. Mr. Newhouse, you may proceed for the appellant. Thank you very much. Good morning, Your Honors. I am Wesley Newhouse, Counsel for Defendant Appellant Mohamed Idris Ahmed. Judge Clay, I would like to reserve two minutes for rebuttal. Thank you, Your Honor. This is an appeal from an order from the United States District Court for the Southern District of Ohio, wherein the court revoked the citizenship and ordered the surrender of the Certificate of Naturalization for my client, the defendant, Mr. Ahmed. Mr. Ahmed is from Somalia. He is a Muslim imam. He travels extensively to preach and teach as part of his religious duties. He emigrated to the United States in 1996. He applied for citizenship in May of 2002, with English being his second language. He employed the services of a translation service to help him complete the N-400 application. That application did not reflect Mr. Ahmed's foreign travel. Mr. Ahmed received a letter notifying him of the date of his interview by an adjudication officer for what was then the INS. That letter instructed him in bold print and all capital letters that he must bring with him to the interview his passport. Mr. Ahmed complied with that directive, appeared for his interview before an adjudication officer, Yvonne Jarrett, on February 27, 2003. He testified that he provided his passport, which showed extensive travel to many places around the world, but including Arab countries and countries in Africa. There is no copy of the passport in his file, the file maintained by the INS. Mr. Ahmed was admitted to citizenship on March 2 of 2003. Over nine years later, in October of 2012, the government brought the current lawsuit, which is the subject of this appeal. The case was tried to the court below. The standard of proof for the government to prove its case under 8 U.S.C. 1451A is by clear, unequivocal, and convincing evidence. The reason for this is... You argue that his statement regarding travel had no bearing on the decision to award citizenship. I'm struggling with understanding that in light of the statutory requirements to be eligible to naturalize. I think, Your Honor, that there isn't an argument that travel is not pertinent to the question of citizenship. The statute quite clearly sets parameters around that. But in this case, Your Honor, the adjudication officer, Ms. Jarrett, testified in her deposition, and then confirmed at trial that she had so testified, that at the naturalization interview, the only reason she would not place a copy of the passport reflecting the foreign travel into the file maintained by the INS, is because she made a determination that the travel reflected therein was not material to the question of whether the person should be admitted. That was her testimony in her deposition. That's her standard operating procedure. Yes, Your Honor. And that's correct, Your Honor, she had no recollection of the actual interview. So, Your Honor, in this instance, we have the government's key witness, the adjudication officer, testifying in deposition that the only reason, and that's how she framed it, in the file for the applicant was because she had made a judgment, a determination, that the information reflected in the passport was not material to her decision. Didn't she also testify that travel in this case would have been relevant because of the volume of travel, and if there's no passport, based upon her modus operandi, if there's no passport in the file, that means that your client did not present a passport, wasn't that part of her testimony as well? That's correct, Your Honor, and I think that helps illustrate an important point here, and that is that the government must present clear, unequivocal, and convincing evidence. Ms. Jarrett changed her testimony. She testified in the deposition that the only reason that that would not be in the file was that she had made a determination that it was not pertinent, it was not relevant. That was her testimony then. Well, Your Honor, what she testified to at trial was that the reason the passport, in accordance with her standard practice, because of course she didn't remember, the reason that the passport was not in the file was because it was not shown to her. Now, when we have those two conflicting versions of events from the government's own witness, well, that's the heart of being equivocal. Ms. Jarrett equivocated. On the one hand, she said that it's not in the file because it wasn't material. On the other hand, she said in accordance with her standard practice, it was not in the file because it was not shown to her. Wasn't there even some testimony about the possibility that documents were lost or removed from the file? Certainly, Your Honor. There was extensive testimony coming primarily from the government's own witnesses that documents that should have been in that file were not. I mean, key documents, a biographical disclosure statement that was a key element. And what was interesting, Your Honor, was that the adjudication officer in reviewing the file had made notations in the file of her review of that biographical statement. And then the biographical statement wasn't in the file. So there were other documents that should have been in the file. For example, the letter notifying Mr. Ahmed that he should appear for the interview and must bring his passport. The testimony was that that letter is put in the file. It wasn't in the file. There was testimony about really lax file handling practices where files were piled up. Sometimes they couldn't find the files when they were to conduct interviews. They were under tremendous pressure because of a huge backlog of cases, and they were doing 12 to 24 of these interviews a day. Interviews where the applicants were told, well, this process will take about two hours. If my math is right, that means a 48-hour day. So the evidence was that the file handling and the materials that should be in that file that should reflect the disclosures that were made by Mr. Ahmed, those materials were not in the file. They came up missing. When the representative of DHS testified, he admitted that the records reflecting the chain of custody for these records were unreliable. They failed to reflect many years of the existence of that file, and he had testified that, no, these records show the entire history of this file, wherever it was. Throughout its entire history, oh, but oops, there were several years of the existence of the file that were not accounted for in those chain of custody records. So your Honors. That's important, and what could be found in the file, it would seem to be the naturalization application itself, which your client signed. And I guess that, and tell me if this is incorrect, but the primary contention of your position is that the application was not accurate, even though he signed the application. And your client doesn't stand behind the entries in the application, even though it's a sworn and signed application. Is that right, or is that not right? He turned the application around and said, sign here, and our client signed there. And your client is claiming that he didn't read the application, and he shouldn't be held to account as a result of his failure to read. Is that also part of your argument? Well, your Honor, I think a refinement of that argument actually is what we're saying, and that is when he was in the meeting with the translator, he didn't read the form, it wasn't presented to him to read, he simply signed. He probably shouldn't have done that. But then he goes to the interview. It was not presented to him to read? I mean, they gave him a pen and he signed it. They gave him a pen and he said, here, sign here, and he signed there. But wasn't he legally responsible for his answers in the application that he signed and endorsed? I mean, I'll just talk about whether he read it or not. We don't really delve into that, do we? Well, your Honor, and this is the point that I was getting to, and that is, that was wrong. He should not have done that. And we can't argue against that, of course not. But then he comes to the interview and he meets with the officer of the United States who's going to make the adjudication, who's going to make the decision. Which interview are you referring to? Talking about the interview before Ms. Jarrett, the adjudication officer for the INS in February of 2003. He appears at that interview and he has his passport that discloses the foreign travel, and he hands it to her. Now, she can't rebut that. She doesn't remember. Well, she said that she subsequently said she didn't get it because if it was pertinent, she would have put a copy in the file, and she didn't put a copy in the file, which leads her to conclude that she didn't get it. And, your Honor, that's all well and good, but we've got to remember, as Justice Brennan said in the Congress case, we cannot take a person's citizenship away based upon speculation. And that is exactly what that is, your Honor. That is exactly what Yvonne Jarrett did when she testified. She doesn't characterize it as speculation. I mean, she's characterizing it as her normal procedure that she doesn't deviate from. And from that normal procedure, she speculates that she must have not been shown the passport, notwithstanding the evidence to the contrary. So, your Honors, we believe that there was a failure on the part of the government to present the passport to the Congress. We present clear, unequivocal, and convincing evidence to support their claim under 8 U.S.C. 1451A, and we respectfully request that the Court reverse the decision of the District Court. Thank you. Thank you. Good morning. May it please the Court, Timothy Belson on behalf of the United States. In addition to answering any questions the panel has this morning, I'd like to focus on three points. First, the District Court's factual finding that Mr. Ahmed himself was responsible for the misrepresentations in his application. Second, the District Court's willfulness finding, and third, the District Court's procurement analysis. On the first point, the District Court correctly found that Mr. Ahmed himself misrepresented foreign travel. I'd like to point the Court to page 16 of the District Court's decision in which it stated, This finding is supported by clear evidence in the record and cannot constitute clear error on appeal. Most importantly, but not exclusively, I'd like to point the Court to the two certifications that the defendant made on his naturalization application. As the Court has focused on, there were two. First, one before he submitted his application that appears in part 11 on page 10 of his naturalization application in which he stated, under penalty of perjury, that the application and evidence submitted with it was true and correct. Second, and I think even more tellingly, part 13, which Mr. Ahmed signed after his naturalization interview. He again certified, under penalty of perjury, that his application and the contents were true and correct. But there's some different language in part 13 which I think is even more telling. Part 13 includes the phrase, I know the contents of this application. Mr. Ahmed, in part 13, read that certification, he testified at trial that he understood part 13 and part 11, the two certifications, to mean that he was certifying, under penalty of perjury, the accuracy of his application. And is it your position that that signature demonstrates that he knew that he was making misrepresentations in the application? Absolutely, Your Honor. But we think that even taking a loan, that would be enough. If it's conclusive, isn't that problematic because our case law recognizes that an immigrant would have an opportunity to make a timely recantation? And if the signature itself is absolute proof of misrepresentation, then where does our case law go that recognizes that an immigrant has a right to explain an error or mistake? Or make a timely recantation? Well, Your Honor, I think here it was not timely in the fact that he had submitted his application first in part 11, certifying the truth and accuracy. And then he was, I apologize. But then isn't the problem whose burden is it to show, to establish that the travel is material? It seems to me that the district court erroneously placed that burden on the fact that he had submitted his application first in part 11, Mr. Ahmed, rather than where it should lie, which is on the government. So how do you, how did the government carry its burden to establish the materiality of that travel? Yes, Your Honor, and I'd like to come back to the other evidence we believe supports the factual finding, but to address your question of materiality. And to be clear, there are two separate elements here. There's actually four under the Cungese standard. Materiality is the third. Procurement is a fourth separate independent element. With regard to materiality, as we understand the defendant's appellant's argument here, as he stated just moments ago, it is not that travel does not raise a natural tendency to influence the outcome. That's the test from Cungese. He admits that foreign travel, which goes to at least two requirements for naturalization, and as the testimony was at the trial and as the district court found, it goes to three different requirements for naturalization. Clearly it impacts and has a natural tendency to influence the determination by then INS, now USCIS, whether to grant a naturalization application. His argument is more of a factual one. He argues that based on his own testimony, he cured the misrepresentation, and because he says he cured it, it can't have been material because they ignored it back then. But it is not a legal argument, and as Cungese establishes, the question of materiality is an objective question of law. It is a matter of law that the court can decide under Cungese. It is clearly met here for two reasons. One, it goes to continuous residence requirement under 1427A1, in which an applicant must show continuous residence for five years as a lawful permanent resident. But in its use, doesn't Justice Brennan's concurrence, which governs here, require the government to show that this is a disqualifying event? And wouldn't that require you to have made some sort of assessment about the travel itself? Was it 30 months? Was it, you know, how many travels away were within the five-year period? But you didn't place that in the record. Well, Your Honor, that goes to the procurement element, and I'm happy to turn to that. Fine. I'm confusing them. I apologize. I just want to make sure we're clear on the analysis. So that is the procurement element. There, you're right, Justice Brennan's test from Cungese in his concurrence is the controlling test, as the parties agree. The question is whether there is the evidence raises a fair inference of actual ineligibility. That's the language from Justice Brennan. Here, the government believes it met that burden, and once it meets that burden, even Justice Brennan agrees that the burden would then shift to the defendant in the case to show that he wasn't actually ineligible. So the question is whether or not there was a fair inference, based on the evidence in front of the district court, that Mr. Ahmed was actually ineligible. The district court went through that analysis. It did not cite the language from Justice Brennan's concurrence. It didn't use the phrase fair inference. But if you look at the district court's analysis, the district court looked at two different requirements, specifically the continuous residence requirement and then the physical presence requirement, which are separate and independent naturalization requirements established by Congress. And it went through, and it showed that based on Mr. Ahmed's own testimony, there were 13 trips in the five years prior to him naturalizing, and those 13 trips, based on his own testimony, were ineligible. So one was possibly longer than six. I've read that testimony, and that testimony said, how long were you out? Well, months maybe, maybe two, maybe three, maybe four. There might have been one that was six months. It's your burden. It's the government's burden to come through and show with specificity that it was sufficient, and you had possession of the information from the district court. And you had possession of the information from his passport. I don't understand why the calculation, why the specificity of that is not in this record when it was within your power to do it. Well, Your Honor, I'd like to push back a bit. We don't believe that the specificity is required under Justice Brennan's test. I'd like to address why the specificity is not in the record as well, but first, Justice Brennan's test was in response to Justice Scalia's position, which was that there is an automatic presumption that a defendant arises whenever there is a material misrepresentation. So once you determine that it has a natural tendency to influence, which essentially the government believes a defendant has conceded here, then automatically the burden would shift. Justice Brennan qualified that further and said, while I do agree that there should be a presumption that arises and shifts the burden, what we need to see is something more than mere speculation and an absence of evidence. We need to see some evidence that raises a fair inference that the actual ineligibility existed. But notably, the test is a fair inference. It is not clear convincing evidence of actual ineligibility. It is simply a fair inference. He's simply moving the test a little bit farther than the automatic presumption that Justice Scalia had proposed in his decision and suggesting that instead there should be something more. There should be some evidence in the record that shows what would have turned up if the material misrepresentation had not occurred. Here, that evidence was in the record. Mr. Ahmed himself testified. He was on 13 international trips. These were not short, one-day trips to Canada or to Mexico. We're talking about long trips by his own testimony, two, three, four months, one lasting six months, and we submit that the District Court correctly determined there is at least a fair inference, which is the test Justice Brennan proposed. There is at least a fair inference from that evidence, which was clear, unequivocal, and convincing because it comes directly from the defendant himself, that he was outside the country for more than 30 months and that one of those trips exceeded six months. And because there is at least a fair inference, then the burden shifts to the defendant. So our position would be that the government did satisfy the burden it carried on that issue and that the burden was properly shifted. And within that shifting burden, where would another defense be articulated, such as the religious? He was engaged in his religious responsibilities and duties, and I understand that there is a statutory, probably exemption is not the correct way to state it, but there is a statutory provision that authorizes one to pursue one's religious work. Yes, certainly we believe that would be his burden to then show that he qualified. Clearly on the facts, I mean, we don't believe that the court should get there. That was never raised at the District Court. That was never raised in the opening brief. It shows up for the first time in the reply brief, and we believe that argument has been waived. The court should not reach it. Nonetheless, if the court were to reach it, on its face, Mr. Ahmed would not even qualify for that exception. Two of the elements that he requires, that he cites as being essential to that requirement show, one, that you have to have at least one year of continuous, non-broken physical presence. As the District Court found, he didn't have that. He was traveling nearly constantly during the time he was a lawful permanent resident. So he wouldn't meet that element. Second, he points out that you have to be traveling solely for religious purposes. His own testimony in the record establishes that while he was, according to him, testifying for religious purposes, he was also traveling to go see family who he was traveling with. He was also traveling to see family who he had failed to disclose on his naturalization application. So he would not meet that standard. We don't think the court needs to reach it, but he would not. Nonetheless, our position would be the burden is on him. With regard to the specificity of records, I'd just like to point out that here, the government's records are somewhat limited in the fact that we're talking about stuff from the 90s and early 2000s. As the court is, I'm sure, well aware, certain exit records were not maintained very well in terms of who's leaving the country. What the government has and what the government submitted is largely re-entry records. That was the testimony at trial, that the texts and the ATS records simply show simply when someone's coming back. So we can use those to establish that he'd been out of the country. But we simply can't necessarily do the math for the court. And the same thing with the passport. The passport is somewhat illegible and includes lots of different stamps. And as I'm sure the court may be aware, travel doesn't always result in a stamp. Sometimes you go through a port and they don't stamp. So it doesn't necessarily easily add up for the government. Moreover, we would submit that the defendant has the burden to rebut it. And I think it's extremely notable and telling that the defendant did not do so here. The defendant is in the, by far, the best position to show how long he was outside the country. He has the records. He bought the tickets. He has the calendar. He could have come into court and said, look, I pulled all the records. I can take this off the table as an issue because I can show definitively that I was only gone 29 months. Or that none of these trips lasted more than six months. Instead, what he testified to at trial was that he had looked at the passport and was convinced of two things. One, no trip was more than one year. That's telling because he did not change his testimony on the six-month issue. He said no trip was more than one year, which I think is very telling. Second, he also said that he had not been gone for more than two and a half years. Now, the district court found that not credible based on his other testimony, which the court had seen, was looking at him in the eye, could take that testimony and evaluate credibility. That's a traditional district court judge role. And the district court determined he was simply not credible in his general guess that he hadn't been gone for more than the 30 months. The district court's analysis, I think, is very reasonable here. It's more than a fair inference. It's the most reasonable inference, but at least it's the fair inference that's necessary here. It said, looking at this testimony, he himself is testifying that he was gone for six months, perhaps more than six months for one. That would break the continuous residence requirement because a break of more than six months raises a presumption that the individual does not satisfy the continuous residence requirement. And then he looked at the math on the 13 total trips, all of which the district court found those 13 were pre-application. And I will note that there's some disagreement between the parties as to whether the trips are 11 or 13. The district court, I would point to the factual findings, it actually made two factual findings. First, it found specific dates for some trips, there were 13 of those. But then it separately made a factual finding, in large part based on Mr. Ahmed's own testimony, that he also took 13 trips, at least 13 trips, prior to naturalizing. So arguably there were 15 trips, the two trips at the back end of the 13 dates would be on top of the 13 here. So that's the 13 he testified he took prior to naturalizing. If we take those 13 and we add them up, he said two, three, four months, even if they're each only three months, that's 39 months. Even if they're, you know, if we're only 11 and they're three months, it's still 33 months. The government submits that this was certainly adequate and any error that the court may have engaged in by not further articulating the exact standard it was applying was harmless. We know exactly what the outcome would be on remand, the district court believes there's at least a fair inference that Mr. Ahmed did not satisfy these two requirements. And then last, I would just point to the record evidence as to the testimony, as to the fact that the interviewer, the re-verifier, and most tellingly perhaps the preparer, who was a disinterested witness, all testified that if they had seen this passport and if they had been told that Mr. Ahmed had traveled, that would be reflected on his testimony. That's a naturalization application. It's not, and the government submits that the district court's finding on that is not clear error. Let me ask you one or two additional questions here. The district court, in his opinion, his findings of fact and conclusions of law, discusses what had occurred in the application process, how the application process had, transpired, and gives the version of events of the plaintiff, I mean of the defendant, and the version by the government. With regard to the factual recitation, the judge doesn't make explicit findings. We can infer findings from the way the factual material is presented, but doesn't necessarily make factual findings with regard to the entire narrative of the factual background and all of that. What are we to, is that a problem here, or are we to believe that the government, the court did make the necessary findings regarding the material events that should govern the judge's decision? Your Honor, certainly the district court could have found more facts and determined which of the conflicting stories were, was the accurate story based on that. As you're pointing out, there is sort of just a recitation for some parts as to what the defendant said and then what the government witnesses said. It would certainly, arguably the government believes, be helpful if the district court, it would prove our case is even stronger if the court had made those. But we don't believe that that's a fatal flaw or a reversible error. Here the district court clearly found several things that we think are material and key. The court found that the naturalization application inaccurately stated zero days outside the country, zero trips, no countries, no foreign countries visited. The district court found that Mr. Ahmed had traveled on the 13 dates specifically listed, and also found that Mr. Ahmed's own testimony showed he had traveled 13 times during the naturalization period. The district court found that Mr. Ahmed's testimony showed he had probably been outside the country for more than six months on at least one trip, and that the other trips were two, three, or four months in length. And finally, we would note that the court also found, specifically looking at footnote 6 on page 9 and 10, that Mr. Ahmed signed Part 13 at his naturalization ceremony, I'm sorry, naturalization interview. That he was the one who signed and said that he certified under penalty of perjury that his application was accurate and that he knew the contents of the application. Mr. Ahmed should not now be allowed to completely change his story when it's convenient. That would render such certifications largely toothless and unenforceable civilly or criminally. All right, one final question here. The judge, in his opinion, indicates that he's basing his decision on the defendant having procured his naturalization by concealment of material facts and willful misrepresentations based on his travel outside the United States, and the court, as a result, does not address and does not need to address the government's other arguments. Do we need to be concerned about the other unaddressed arguments here, or is the court correct that the other arguments did need to be addressed? Well, it depends on what this court decides to do, Your Honor. But I'm asking for your opinion. We don't think you need to be worried about it at all. As the government suggests, the court can affirm on this current decision, and if it does, then the district court is correct that the additional arguments, which there were some arguments regarding other willful misrepresentations that Mr. Ahmed made regarding family and things like that, simply would be additional superfluous analysis. Additionally, there were arguments regarding illegal procurement, which is a separate method of showing that someone was inaccurately or improperly granted naturalization. The court would not need to reach any of those, because the result for all of the government's arguments is the same outcome. If the government prevails on any of the arguments, the result would be denaturalization, revocation of the earlier naturalization order. So as long as the court affirms, the district court was correct. If the court decides that there was some error that needs to be reversed, or for additional factual finding, it could instruct the court to make additional holdings on the other arguments, which are all preserved and ready for the court to rule on. And certainly, that would be the appropriate remedy, rather than just outright reversing without any further instruction to the district court. All right, thank you. Your Honors, as I listened to my distinguished opposing counsel's dissertation of the facts, I did note that he makes reference to Mr. Ahmed having signed the N-400 form in Part 13, when the government's witness, the translator, who testified as to her standard practices, testified that she signed it. So that evidence unto itself is also equivocal. I'm not quite following that. No, he did testify that he signed it. The government's witness said that she signed it. And so the evidence on that was equivocal. What about Part 11? Part 11, he signed, Your Honor. And that part says, I declare under penalty of perjury. Yes, Your Honor, yes. As for the time outside of the United States, and the impact that that has on the raising of the inference of NLAA, it's noteworthy. Judge Watson devotes two footnotes, footnotes three and four, in his opinion, to discussing the condition of the records presented by the government regarding the foreign travel, and the lack of reliability, and the internal inconsistency of those, of the questions in his mind that arose from his review of those records. Also, in respect to the amount of time outside of the United States, the government utterly failed to present evidence as to what that was. They relied upon the guesses that Mr. Ahmed made years after the fact as to generally how much time he might have spent while traveling. And that evidence was the only evidence presented by the government regarding their contention that he was outside of the United States for such a period of time as to be ineligible. The government couldn't rely on your client's own testimony, are you? Your Honor, our client's own testimony regarding the amount of time out of the United States, admittedly, by his admission, by his testimony, was not conclusive or reliable. It was his best guess as to generally how much time he usually spent when he would go on a trip. And it was a complete range. It might have been a month. It might have been two months. It might have been three months. One question on the district court's decision. I'm sorry, Your Honor? I have one question on the district court's decision. What, if any, failure to resolve a factual, make a factual finding, is there a particular failure to make a factual finding that you think is fatal to the district court's determination? Yes, Your Honor. And what specifically was that? Well, Your Honor, the court needed to make a determination regarding, or make a series of determinations regarding the events leading up to the naturalization interview. And then what transpired within the naturalization interview. So is it the interview that's problematic, or the notario's work on his behalf? Do you think that there was a failure to make a factual finding? The most significant failure in terms of factual findings were in respect to the events surrounding the interview by the adjudication officer. Your Honors, thank you. Oh, I'm sorry, Judge Clay, you had a question? Okay, very good. Thank you, Your Honors. You let me overstay my time somewhat. I appreciate it. And we respectfully request that the court reverse the court vote. Thank you.